No. 18,291.

C. C. JONES *v.* HOWARD FRANKLIN.
(340 P. [2d] 123)

Decided May 25, 1959.

Mr. FRANCIS P. O'NEILL, Mr. WALTER L. GERASH, for plaintiff in error.

Mr. G MICHAEL MORRIS, Mr. MAXWELL P. ALEY, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE KNAUSS delivered the opinion of the Court.

IN the trial court plaintiff in error was defendant in

an action brought by defendant in error to recover actual and exemplary damages as a result of an alleged assault and battery committed by plaintiff in error upon defendant in error. We shall refer to the parties as they appeared in the trial court.

The alleged assault occurred on December 20, 1954. At that time defendant was a police officer in Denver. After issue joined trial was to a jury and resulted in judgment for plaintiff for actual and exemplary damages. Defendant brings the case here on writ of error. For reversal it is urged that the trial court erred as a matter of law in submitting to the jury the question of damages sustained by plaintiff and in giving instruction No. 11, which defined the damages recoverable in the event the jury resolved the issues in favor of plaintiff. It is also urged that the "elements of damages submitted by the court to the jury were based on mere possibilities," and not sustained by "competent, direct or material evidence."

Plaintiff's testimony was that on the evening in question he had been at the home of a friend assisting in the repair of an automobile, returned to his home and was about to put his car in the garage when defendant and another officer drove into the alley demanding that plaintiff exhibit his driver's license, whereupon plaintiff requested an opportunity to open the garage door, preliminary to exhibiting his driver's license; that defendant "grabbed me by the arm and jerked me out into the alley, literally knocked me off my feet, and swung me into the alley." Defendant then advised plaintiff he was under arrest. Upon inquiring why he was under arrest defendant replied he "didn't have to have no reason to arrest anybody" and "he was doing it on his own." Thereupon plaintiff's wife came upon the scene and he handed her his wallet containing his driver's license and accompanied the defendant in the police car which was driven by another officer. Plaintiff testified that defendant was exceedingly angry and applied vile epithets

to him, and a short distance west of Colorado Boulevard while both were seated in the rear of the car, took a pair of handcuffs from his pocket, and as plaintiff testified "he struck me across the face, the first blow catching me right across my nose, breaking my nose and from there on I tried to protect my face the best I knew how, but saw I wasn't going to be able to; so then I placed my head between my legs, then he proceeded to work me over with the same weapon. He cut two or three gashes in the back of my head." The officers then drove to the Denver General Hospital where plaintiff was treated for his injuries, the cuts in his head sutured and other wounds treated. His nose and chin required three stitches and seven stitches were taken in the back of his head. He testified that his nose bled from the night of December 20th to December 25th. He further testified concerning his pain and suffering; medical bills incurred for private physicians; loss of time from his employment, and continuous headaches. Defendant's testimony was to the effect that plaintiff had failed to stop at a stop sign; had run his car "over the wrong side of the street" just prior to entering the alley where he was arrested; that his vehicle did not have lights burning, and that he had not used handcuffs. Plaintiff's testimony was that his lights were burning. Defendant testified that he saw blood coming from plaintiff's nose, but stated that he used only such force as was necessary to subdue him in the automobile.

Dr. L. W. Robinson, a physician and surgeon, testified regarding the injuries sustained by plaintiff stating that when he first saw him he had a splint across his nose, a swollen face, "and he obviously had incurred a fractured nose." He further stated that plaintiff was bruised about the face and scalp, had one laceration in the chin, requiring a couple of stitches, and some seven stitches in the scalp; that there were abrasions and contusions and a bruise across the knuckles of one hand.

It is contended by counsel for defendant that

this evidence was so remote, speculative and conjectural "that the jury could do nothing more than guess as to whether or not the injuries claimed by plaintiff were actually attributable to this assault." We find no merit in this claim. As a broad general rule any evidence which tends to establish the nature, character, and extent of the injuries which are the natural and proximate result of defendant's acts is admissible if otherwise competent. *Davis v. Bonebrake,* 135 Colo. 506, 313 P. (2d) 982. The evidence adduced by plaintiff, and which the jury believed, brings this case squarely within the rule just stated. Here the thing complained of was an assault and battery, and its natural and attendant circumstances were detailed not only by plaintiff, but by his physician, who visited and treated him within twenty-four hours of the assault. We find nothing in this record to justify the statement made by counsel for defendant that the verdict was based upon conjecture and speculation.

Instruction No. 11 correctly informed the jury of the elements to be considered in assessing actual damages to be awarded plaintiff in the event the verdict was in favor of plaintiff. This instruction enumerated five elements to be considered in assessing plaintiff's damages: (a) Fear, anxiety, indignity and disgrace; (b) Physical injuries and nervous shock; (c) Pain and suffering; (d) Medical expenses, and (e) Loss of earnings. In each instance the trial court limited these elements with the qualifying words, "if any."

There was ample competent evidence to support the finding of the jury that the plaintiff had suffered a severe battery at the hands of defendant.

Holding, as we do, that the trial court correctly instructed the jury and that the verdicts are amply supported by the evidence, the judgments are affirmed.

Mr. Justice Sutton not participating.