BECKLEY *v.* MILLER.

Opinion delivered November 7, 1910.

1. APPEAL AND ERROR—EXCEPTIONS—PROVINCE OF BILL OF EXCEPTIONS.— Where the bill of exceptions does not show that there were any exceptions saved to the ruling of the court in giving or refusing instructions, such errors will not be considered on appeal though the motion for new trial states that the court erred in this respect. (Page 382.)

2. FRAUD—CONCEALMENT—EVIDENCE.—Where a building contractor made default upon his contract, and his sureties took charge of the building and undertook to complete it, evidence that one of the sureties, who was placed in charge of the work by his cosureties, did not inform a subcontractor that his principal had defaulted, but concealed that fact from him, justifies a finding that such surety fraudulently induced the subcontractor to perform his undertaking, and hence that the sureties were liable for the amount due under the contract. (Page 383.)

3. PRINCIPAL AND SURETY—ESTOPPEL.—Where the sureties of a building contractor, upon his default, assumed to carry out his contracts, they are estopped to deny the terms of his contract with a subcontractor, which may be proved by the correspondence between the contractor and subcontractor. (Page 383.)

4. TRIAL—PROVINCE OF COURT AND JURY.—While a trial court may set aside a verdict and grant a new trial where the finding of the jury is clearly against the weight of the evidence, it has no power to reduce the amount found by the jury and enter judgment therefor, as the trial court cannot substitute its judgment for that of the jury upon a disputed question of fact. (Page 383.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

The plaintiff, M. H. E. Beckley, brought this suit against the defendants, A. J. Miller, W. N. Adams, W. E. Adams, E. M. Hall, R. E. Major and J. M. Adams, to recover the sum

of $506.40, alleged to be due him by the defendants for labor done and materials furnished in the erection of a school building in Arkadelphia.

No service was had upon the defendant, A. J. Miller. The other defendants answered, denying all the material allegations of the complaint; and the cause thereafter proceeded against them. The facts, so far as material to a determination of the issues involved, are substantially as follows:

On the 29th day of April, 1907, A. J. Miller and the Arkadelphia Special School District No. 1, of Arkadelphia, Arkansas, entered into a written contract whereby the former agreed to erect a school building for the latter according to the terms and specifications set out in the contract. Miller was required to execute a bond conditioned for the faithful performance of said contract, and the defendants herein signed the same as his sureties. Miller made a contract with the plaintiff to furnish the material and perform the labor necessary in placing blackboards on the walls of said school building. According to plaintiff's testimony, Miller wrote him for prices on the blackboard work on October 7, 1907, and again on January 4, 1908. Plaintiff made him prices by letter dated January 6, 1908, and the terms were accepted by letter from Miller dated January 15, 1908. Plaintiff furnished the blackboard, consisting of 3,376 feet, at 15 cents per square foot, making a total of $506.40, as per the contract. The material was shipped about February 1, 1908, and the work of placing the same on the walls of the building was completed about March 25, 1908. No objection is made to the character of the work or of the materials; but it is the contention of the defendants that it was the contract of Miller, and that they are not liable.

The plaintiff adduced evidence at the trial tending to show that Miller abandoned and forfeited his contract; and that his bondsmen took charge of the work and completed the building under its terms; that they were in charge at the time the labor was done and the materials furnished by him were placed in the building; that the value of the service performed, together with the materials used, was $506.40.

Ned Burson, who did the work for plaintiff, testified: "Mr. E. M. Hall was present as superintendent of the work during

the time that I worked on the job. He stated to me, in conversation, that there was a possibility that Mr. Miller would not be able to finish the job under the contract, and, if he did not do so, the bondsmen would complete the contract. He further stated to me that he was one of the bondsmen on Mr. Miller's bond. After I completed the blackboards Mr. Hall and I made the measurements, and he approved the measurements of the blackboard spaces."

E. M. Hall, for the defendants, testified that in December, 1907, Miller got behind with his bondsmen several thousand dollars, and that about the 1st of February, 1908, he took charge of the building as superintendent of Miller, and continued as such until the completion of the building about five months later. But, on cross examination, he admitted that he took charge of the work and completed it with an understanding on the part of both Miller and the bondsmen.

Evidence was adduced on the part of the defendants tending to show that the value of the work done and materials furnished by plaintiff was only $214.

The record shows the following:

"The court on its own motion gave to the jury the following instructions, being in the form of queries, No. 1 and No. 2, same being all the instructions given by the court in this cause, towit:

"No. 1. Did the defendant Hall, in the representation of his own interest, or in his own interest and his codefendants together, commit any fraud on the plaintiff by which plaintiff was induced to furnish and install the blackboards in place in the school building?

"No. 2. What was the cash market value of the blackboards in place in the school building at the time they were installed?"

Additional instructions were presented to the court by the defendants, but it does not appear from the record that any exceptions were saved to the action of the court in refusing same. The record further shows the following:

In answer to query No. 1, the following verdict or finding was by the jury returned, towit: "Yes." (Signed) C. T. Clark, Foreman.

In answer to query No. 2, the following verdict or finding was by the jury returned, towit: "Five hundred and six dollars and forty cents ($506.40). [Signed] C. T. Clark, Foreman."

Whereupon the court, over the objection of the plaintiff, reduced the amount of the finding of the jury from $506.40 to $214, and entered judgment therefor in favor of the plaintiff against the defendants.

Both parties filed their motion for a new trial, and, upon the same being overruled, have duly prosecuted an appeal to this court.

*Callaway & Huie,* for appellant.

It was error to refuse plaintiff's request for judgment on the verdict for $506.40, and in reducing same to $214, over his objections. 76 Ark. 88; *Id.* 538; 63 Ark. 94; 77 Ark. 556.

*McMillan & McMillan,* for appellees.

1. The court should have instructed a verdict for appellees. The mere fact that they signed Miller's bond would not entitle appellant to recover from appellees for the blackboard that went into the building. 86 Ark. 219.

2. Miller was not a party to the suit, and defendants would not be bound by an agreement made by him and plaintiff for the blackboard. Plaintiff's letter to Miller, "Exhibit C," is a self-serving declaration, and not competent evidence. 92 Ark. 476. "Exhibit D," Miller's letter, is hearsay, not binding on defendants. 89 Ark. 481. Letters, "Exhibits E and F," should have been excluded. They are hearsay, and written by third parties to plaintiff. 69 Ark. 305; 89 Ark. 481.

3. The value of the blackboard as found by the verdict was excessive. The trial court had the right to set aside the verdict, but if it erred in entering judgment for an amount it thought the evidence justified, the case should be remanded for a new trial, rather than for judgment to be entered upon this verdict. *Taylor* v. *Grant Lumber Co.,* 94 Ark. 566; 41 S. W. 251; 47 Ark. 567; 57 Ark. 461, 466.

HART, J., (after stating the facts). 1. It is insisted by counsel for the defendants that the court erred in the instructions given and in refusing those asked by defendants; but, under our rules of practice, we can not consider these assign-

ments of error. The bill of exceptions does not show that there were any exceptions saved to the ruling of the court in giving or refusing instructions. It is stated in the motion for a new trial that the court erred in this respect; but this is not sufficient. On appeal, "the matters complained of, together with the objections and exceptions to the rulings of the court, must be brought into the record by bill of exceptions, and the motion for a new. trial can serve no other purpose than to assign the ruling or action of the court as error." *McKinley* v. *Broom,* 94 Ark. 147, and cases cited.

It will be remembered that the defendants were sureties on the bond of A. J. Miller, principal contractor for the erection of the school house at Arkadelphia. The testimony on the part of the plaintiff tends to show that Miller made default on his contract, and that the sureties on his bond took charge of the erection of the building and undertook to complete it according to the terms of his contract; that E. M. Hall, one of the sureties, was placed in direct charge of the work, and was so engaged while the plaintiff performed his contract; that he did not inform plaintiff that Miller had made default in his contract, but concealed that fact from him. E. M. Hall, on cross examination, admitted that he took charge of the work upon an agreement between Miller and his bondsmen. Under such circumstances, it can not be said that the finding of the jury in response to query or instruction No. 1 is without evidence to support it.

2. The contract between the plaintiff and Miller was made by correspondence between them. These letters were introduced in evidence, and their introduction is assigned as error. The defendants were sureties on the bond of Miller, and completed his contract by arrangement with him. This is admitted by one of their number, and is not denied by the others. They thus assumed to carry out his contracts. While in charge, they permitted plaintiff to perform his contract, and after its completion accepted it. They are estopped from denying the terms of the contract; and it was competent to prove its terms by the letters in question.

3. We are of the opinion, however, that the court erred in reducing the verdict. While, as was held in the case of *Taylor* v. *Grant Lumber Co.,* 94 Ark. 566, the trial court may set

aside the verdict and grant a new trial where the finding of the jury is clearly against the weight of the evidence, it has no power to reduce the amount found by the jury and enter judgment therefor. Such action on the part of the court invades the province of the jury, and takes away from the parties the full benefit of the judgment of the jury, as guarantied by the Constitution.

The trial court may tell the jury in a proper case that there is no question of fact for it to determine; and may also set aside a verdict for errors committed by the jury, and grant a new trial; but it can never substitute its judgment for that of the jury upon a disputed question of fact. It is obvious that, if the trial court could do this, the verdict of the jury would have no binding force, but would be persuasive merely, as is the case of the verdict of a jury in a chancery court.

The amount to be recovered by the plaintiff was a disputed question of fact, and it was the exclusive province of the jury to determine it. This rule is established by an unbroken line of decisions in this court. See Crawford's Digest, vol. 2, pages 905 and 906; *Ib.* vol. 3, pages 463 and 464.

The court should have entered judgment for the amount of the verdict, $506.40; and for the error in reducing the amount of the verdict and entering judgment therefor, the judgment will be reversed, and the cause remanded with directions to enter judgment upon the verdict.

KIRBY, J., not participating.